In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00165-CR
______________________________


JONATHAN DAYTON EAVES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2002-F-00009


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Jonathan Dayton Eaves appeals from his conviction for aggravated sexual assault. 
He was charged with causing his sexual organ to contact the female sexual organ of a
child younger than fourteen years of age. The punishment range for this offense is
imprisonment from five to ninety-nine years or life, and a fine of up to $10,000.00. Eaves
accepted the State's plea agreement of three years' imprisonment, but the trial court
rejected this agreement and the case proceeded to a jury trial. Eaves first entered a plea
of not guilty, but changed his plea to guilty during trial when the court decided not to admit
certain evidence. Another offer of essentially the same evidence was made at the penalty
phase, but much of this evidence was again refused by the court. The jury assessed
Eaves' punishment at thirty years' imprisonment and a $10,000.00 fine. 
          The single issue before this Court is whether the trial court committed reversible
error at the penalty phase of trial by refusing to admit this evidence as showing the
circumstances of the offense and in mitigation of punishment. The arguments are made
on constitutional grounds and seek the proper application of Tex. Code Crim. Proc. Ann.
art. 37.07 (Vernon Supp. 2004) and Tex. R. Evid. 412.
          It is important for our consideration of this issue to review the pertinent evidence
admitted before the jury, the evidence proffered by Eaves at the penalty phase, and the
specific rulings of the trial court concerning Eaves' proffer. It is also important to remember
that the issue under consideration concerns alleged error only at the penalty phase of trial.
Evidence Admitted Before the Jury
          Before the penalty phase began, the evidence already presented to the jury showed
that the victim in this case was eleven years old at the time of the offense. Although the
victim did not testify, the evidence included statements by her that Eaves had taken her
to a trailer and raped her. It included the testimony of a Sexual Assault Nurse Examiner
(SANE) that she had not done a specific type of physical examination of the victim because
she "was a young girl and not sexually active." The SANE nurse further testified the victim
had trauma to her genitals, "consistent with her history of sexual assault." She said the
victim "was an average eleven year old," but acknowledged she was developed enough
to have a menstrual cycle. The patient history contained in the SANE nurse's report
included the victim's statements that the sex act with Eaves was the result of force and
that, "I told him I was a virgin and he told me that he would be my first." 
          When Eaves testified, he was asked to describe for the jury the physical
appearance of the victim, and he stated, "she comes up to my chin in height," and was
physically well developed. 
          Rafael Otero, Ph.D., a psychologist, testified that results from tests he administered
to Eaves showed "clearly that he is not at all sexually interested nor aroused by children." 
Evidence Proffered by Eaves at the Penalty Phase and the Trial Court's Rulings
          Although a proffer of testimony had been made and rejected at the guilt/innocence
phase, the trial court made the following pronouncement at the beginning of the penalty
phase, before Eaves renewed his proffer:
I'm not going to allow the introduction of any evidence regarding the victim's
promiscuity or sexual conduct prior to or after the offense in this case. . . .
I don't believe any evidence regarding statements or conduct made to third
parties is relevant; and therefore, I'm going to rule that it's not admissible. 
 
With respect to statements or conduct by the victim to the Defendant
regarding her age, . . . I cannot comprehend that the state of the law is such
that an eleven (11) year old's conduct and statements are admissible to
show mitigation for the Defendant's conduct. 

          Eaves then testified outside the presence of the jury that he met the victim at a
liquor store; that she told him she was sixteen years old and had a driver's license; that she
was driving a car at the time; that she called him on the telephone almost every day for a
month; that on the date of the incident, she called him around 10:30 p.m.; that he picked
her up at her grandmother's house, where she voluntarily got in the car with him; that he
was eighteen years old at the time; that he is 6'1" tall and that the victim was about "up to
[his] chin in height" and was physically developed; that they went to his father's trailer and
had consensual sex; that his father was asleep at the trailer and never awoke; that had he
(Eaves) known the victim's true age, he would have never had any type of sexual conduct
with her; that he did not rape the victim. 
          After this testimony, the court ruled as follows:
[T]he State has actually objected to the introduction of this testimony . . . of
the evidence regarding the victim's age and the victim's sexual conduct.
 
. . . .
 
. . . . And I'm going to sustain the State's objections to that evidence
and overrule your proffer . . . on that evidence. 

          Eaves then proffered additional testimony outside the presence of the jury. He
offered Lanasha Jefferson, who, according to his proffer, would have been at least
eighteen years of age at the time of the incident and would have testified that she grew up
with the victim; that the victim is 5'8" to 5'9" tall but more fully developed than herself; that
the victim has been developed since she was seven or eight years old and that she started
her menstrual cycle around that age; that the victim is not well known for truth and honesty;
that she lies consistently about her age, telling people she is eighteen or nineteen years
old; that she tries to lead people to believe she has a driver's license; that she drinks hard
liquor; that she started having sex at age nine or ten; and that she has told her that if she
(the victim) cannot have Eaves, then no one can. Jefferson would also have testified to
specific incidents of other sexual conduct by the victim and that the victim has consented
to sexual conduct both before and after the incident in question with parties other than
Eaves.
          David Neal was offered as a witness who would testify that he had personal
knowledge the victim had lied about her age and that she had stated to him that, "if I
cannot have [Eaves] then no one can." 
          The testimony of Brittany Markos (Eaves' sister) was proffered. She would testify
that the victim called Eaves often, and continued to do so after the incident in question; that
she also heard the victim say that if she could not have Eaves then no one could; and that
the victim dresses like a "slut." 
          Eaves' father, Dale Eaves, would testify that he had seen numerous times on the
caller ID at his house where the victim had called, and that he was at his house at the time
of the incident in question and "heard no sounds of any kind." 
          After this proffer, the court made the following pronouncement:
And I have sustained the State's objection to that testimony and I've
overruled the proffer. 
 
Now so we're clear when we bring the jury back in, we're going to
proceed with the punishment phase but any evidence regarding the victim's
age and any evidence -- or any evidence that the victim was over the age of
fourteen (14) and any evidence regarding the victim's sexual conduct or
promiscuity is not admissible. 

          The penalty phase of the trial proceeded, and Eaves called Otero to testify. During
the State's cross-examination of Otero, the prosecutor asked his opinion as to why an
eighteen year old would want to have sexual relations with an eleven year old. Eaves
requested a hearing outside the presence of the jury. The jury was excused, and the trial
court stated:
We're having a hearing outside the presence of the jury and counsel
previously indicated that the State's attorney, in his opinion, has opened the
door to examination regarding the age of the -- the issue regarding the age
of the victim by virtue of his question of why an eighteen (18) year old would
want to have sexual relations with an eleven (11) year old, and I have ruled
that it does not open the door but I'm allowing counsel an opportunity to
make a record as to what the testimony would be. 

          In the testimony of Otero that was not admitted, counsel asked him whether he had
an opinion as to whether Eaves would have had any kind of sexual contact with the victim
if he had known she was eleven years old. Otero would have testified that the
"[p]sychological data as it presents itself to me would indicate that if he knew that she was
eleven (11) years old he would not have had sex with her." 
          The court then made the following ruling:
I'm overruling defense counsel's motion to make inquiry into this line of
questioning on the basis that the State opened the door to it. . . . [Y]ou've
made your proffer but I'm overruling your proffer. 

          It is not entirely clear that the trial court excluded all the testimony Eaves proffered
outside the presence of the jury. It is clear, however, the court excluded all testimony
relating to the age of the victim and all testimony concerning the victim's sexual conduct,
both before and after the incident in question. The court's ruling on the proffer of Otero's
testimony is also clear. 
Standard of Review—Abuse of Discretion
          An appellate court reviews a trial court's exclusion of evidence for an abuse of
discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on
reh'g). An abuse of discretion is established "only when the trial judge's decision was so
clearly wrong as to lie outside that zone within which reasonable persons might disagree."
Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). 
          Evidence may be offered at the penalty phase by the state and the defendant as to
any matter the court deems relevant to sentencing, including "the circumstances of the
offense for which he is being tried." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). 
Questions of relevance are left largely to the trial court, and we will not reverse absent an
abuse of discretion. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). In
reviewing a trial court's relevancy decision, applying the abuse of discretion standard, we
will not intercede as long as the trial court's ruling was at least within the zone of
reasonable disagreement. 
          In a prosecution for aggravated sexual assault, reputation or opinion evidence of the
past sexual behavior of an alleged victim is not admissible, and evidence of specific
instances of an alleged victim's past sexual behavior is not generally admissible. Tex. R.
Evid. 412(a), (b)—the "rape shield" rule. 
Argument
          Eaves complains on three connected bases that the testimony was improperly
disallowed. First, he argues that, under the Confrontation Clause of the Sixth Amendment,
he should have been allowed to introduce evidence to controvert the State's evidence and
that the constitutional connection required the court to admit mitigating evidence under
Tex. R. Evid. 412(b)(2)(E). He also argues that the evidence should have been admitted
under Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) as mitigating evidence and as
evidence of "the circumstances of the offense for which he is being tried."
          The State argues the court did not abuse its discretion by refusing to admit the
evidence. It argues that Eaves waived his rights under the Confrontation Clause because
he pled guilty before the victim testified and that he cannot claim that force or lack thereof
is an issue because consent is not a defense when the sexual assault victim is under
fourteen years old.
Preservation of Error
          Although Eaves raised constitutional issues in his brief, he raised no such argument
before the trial court. Constitutional errors may be waived or forfeited by a failure to make
a timely and specific assertion of the right. Boulware v. State, 542 S.W.2d 677, 682 (Tex.
Crim. App. 1976). Further, for a contention to be raised on appeal, it must have been
raised at trial by objection. Error is not preserved for review if it varies from the objection. 
Ibarra v. State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). 
          Tex. R. Evid. 412(b)(2)(E), cited by Eaves on appeal, is one of the few exceptions
to the "rape shield" rule. However, because he did not raise that argument before the trial
court, we cannot address it on appeal. 
          The only complaints preserved for our review are Eaves' contentions that the
excluded testimony was admissible under Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
as evidence of the circumstances of the offense for which he was tried and as mitigating
evidence. Because it is not clear what evidence the trial court excluded, we consider the
entirety of Eaves' proffered testimony in our determination of whether the trial court abused
its discretion. 
Analysis
          We first note that the argument the victim could not consent because of her age is
not relevant to this discussion because the claim of error does not relate to guilt/innocence,
but only to a determination of an appropriate punishment applicable to the offense. 
Because the victim was under the age of fourteen, consent was not an available defensive
theory. See Tex. Pen. Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2004). It therefore was
not relevant as to guilt or innocence. That is not the case, however, where determination
of an appropriate punishment is the issue. The question squarely presented is whether the
trial court abused its discretion by refusing to admit Eaves' proffered testimony at the
penalty phase of the proceeding, including evidence of consent, to show the circumstances
of the offense and in mitigation of punishment. 
          The initial question is whether the excluded evidence is relevant. See Tex. R. Evid.
402. In all criminal cases, after a finding of guilt, regardless of the plea or whether
punishment is assessed by the judge or the jury, both the state and the defendant may
offer evidence as to any matter the court deems relevant to sentencing. The trial court is
thus required to afford a defendant the opportunity to present evidence regarding
punishment. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).


 Such evidence may
include the defendant's prior criminal record, general reputation, and character. Id. It may
also include opinions regarding the defendant's character, the circumstances of the offense
for which the defendant is being tried, and any other evidence of an extraneous crime or
bad act the defendant has been shown beyond a reasonable doubt by evidence to have
committed. Id.
          Any or all of these types of evidence, as proffered by either the state or the
defendant, have the purpose of providing information to the judge or jury which will allow
the making of a reasoned and fair determination of an appropriate punishment for the
crime committed. As provided by the defendant, such evidence seeks to reveal mitigating
circumstances for consideration in assessing punishment. "Mitigating circumstances" is
defined as:
1. A fact or situation that does not justify or excuse a wrongful act or offense
but that reduces the degree of culpability and thus may reduce . . . the
punishment. . . . 2. A fact or situation that does not bear on the question of
a defendant's guilt but that is considered by the court in imposing
punishment and esp. in lessening the severity of a sentence.

Black's Law Dictionary 236 (7th ed. 1999).  

          The concept of a "mitigating circumstance" has more often been explicitly discussed
in opinions addressing death penalty deliberations, but the concept is not unique to that
situation, and is equally applicable in every case where evidence is offered by a defendant
to assist the jury or judge in determining the fair and proper sentence for the particular
defendant for the crime committed, considering his or her level of culpability and all other
matters. That is the reason there is a range of punishment rather than a set punishment
for each conviction. The court has recognized that this principle is "one of the fundamental
traditions of our system of criminal jurisprudence," Jurek v. State, 522 S.W.2d 934, 940
(Tex. Crim. App. 1975), and it is imbedded in both rule and statute.
Evidence of the Victim's Sexual Conduct with Persons Other than Eaves
          The Legislature has determined that, in cases where the defendant is charged with
offenses such as the one at issue here, evidence of specific instances of an alleged
victim's past sexual behavior is not admissible except in limited circumstances, and then,
only by a definite prescribed procedure. Tex. R. Evid. 412. This "rape shield" rule is not
limited in its applicability to only the guilt/innocence phase of trial. Although Eaves claims
on appeal that his proffered testimony was admissible pursuant to one of the exceptions
provided for in this rule (Rule 412(b)(2)(E)), as noted above, he never raised that argument
before the trial court and therefore failed to preserve it for our review. Further, Eaves (and
the trial court) only considered whether the evidence was admissible under Tex. Code
Crim. Proc. Ann. art. 37.07, and Eaves never sought its admission under any of the
exceptions provided by Rule 412. We conclude, therefore, the trial court did not err in
excluding that portion of the proffered testimony dealing with the victim's alleged sexual
conduct with persons other than Eaves. This would specifically apply to the proffered
testimony by Jefferson that the victim started having sex at age nine or ten, of specific
incidents of other sexual conduct by the victim, and that the victim has consented to sexual
conduct both before and after the incident in question with parties other than Eaves.



The Other Excluded Evidence
          We conclude, on the other hand, the trial court did abuse its discretion in excluding
the other evidence proffered by Eaves. The facts and circumstances surrounding the
offense and evidence relevant to mitigation of punishment are all admissible at the
punishment hearing. Williams v. State, 535 S.W.2d 637, 639 (Tex. Crim. App. 1976); 
Longoria v. State, 700 S.W.2d 274, 276 (Tex. App.—Corpus Christi 1985, no pet.). 
Indeed, this Court has recently recognized in a prosecution for aggravated sexual assault
involving a victim under the age of fourteen, in the context of a review of an ineffective
assistance of counsel claim, that, while "consent could not be a legal defense, it
conceivably could have been relevant and persuasive for mitigation of the punishment." 
Rogers v. State, 85 S.W.3d 359, 361 (Tex. App.—Texarkana 2002, no pet.). That is
especially the case when the State's theory and proof offered was of a forcible violent rape. 
          It is apparent the trial court's rejection of Eaves' evidence was based in part on its
disbelief that the appearance, conduct, actions, or verbal claims by an eleven-year-old girl
could be admissible to show mitigation for the defendant's conduct. To this extent, the court
applied the wrong analysis. The court's reasoning does not go to the admissibility of the
evidence, but to its believability, or the weight that jurors might place on such testimony. 
That is a call to be made not by the trial court, but by the fact-finder. Under these facts, we
conclude the excluded evidence, other than that pertaining to the victim's sexual conduct
with persons other than Eaves, was clearly admissible to show the circumstances of the
offense and for purposes of mitigation. 
Harm Analysis
          In our review of nonconstitutional error, we are to disregard errors, defects,
irregularities, or variances that do not affect substantial rights of the accused. Tex. R. App.
P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious
effect or influence in determining the jury's verdict. Tex. R. App. P. 44.2(b); King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it appears the
error "did not influence the jury, or had but a slight effect," we must conclude that the error
was not harmful and allow the conviction (or punishment) to stand. Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In this case, the erroneously excluded evidence showed a lack of culpability on the
part of Eaves. This is not a defense to the act, but in determining punishment, the
culpability of the actor is a critical matter. The evidence did not come before the jury from
other sources, and the erroneously excluded evidence was all Eaves had available to raise
this before the jury. 
          Although not decisive, it is also worth noting again that the plea agreement reached
between the parties—and refused by the trial court—was for three years' imprisonment,
rather than the thirty assessed by the jury plus the maximum fine of $10,000.00. The
prosecutor had access to all the information, including that which was not presented to the
jury, and had recommended a much lesser penalty for the offense. 
          Tending to make the error harmless was the State's evidence of Eaves' extensive
juvenile record for criminal conduct. Eaves also admitted he has an alcohol problem and
volunteered that he smokes "weed." Also, much of the excluded testimony concerning the
victim and her conduct came from Eaves' live-in girlfriend with whom he has a child, and
there was evidence that he has another child by a different woman to whom he is not
married, and that he was behind in his child support for that child.
          Even taking these matters into consideration, however, we are not convinced the
punishment assessed by the jury would be the same if it had heard the erroneously
excluded testimony. We cannot say, therefore, the error "did not influence the jury, or had
but a slight effect." Based on all of these matters and our review of the record, we conclude
the error affected a substantial right of the accused and requires reversal for a new
punishment hearing.
Conclusion
          We reverse that part of the judgment assessing punishment and remand the case
for a new punishment hearing.
 
 
 
                                                                           Donald R. Ross
                                                                           Justice
 
Date Submitted:      April 22, 2004
Date Decided:         May 27, 2004
 
Publish